1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT A. LOPEZ,**<br><br>Petitioner,<br><br>**v.**<br><br><br>**G.D. LOUIS,**<br><br>Respondent. | **Case No. 1:12-cv-01777 DAD MJS (HC)**<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by David Eldridge of the office of the California Attorney General.

## I.    PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction by jury trial on July 16, 2007, of murder, assault with a deadly weapon, active participation in a criminal street gang, and various gang and firearm enhancements. (Clerk's Tr. at 647-650.) On September 29, 2009, Petitioner was sentenced to an indeterminate term of 40 years to life plus eight years in state prison. (Id.)

1

1    Petitioner's direct appeal was denied by the California Court of Appeal, Fifth

2  Appellate District on June 28, 2011. (Answer, Ex. A.) Petitioner filed a petition for review

3  with the California Supreme Court on July 21, 2011. (Lodged Doc. 17.) The petition was

4  summarily denied on September 28, 2011. (Lodged Doc. 18.)

5    Petitioner proceeded to seek collateral relief from the state court. On February 28,

6  2012, Petitioner filed a petition for writ of habeas corpus with the Stanislaus County

7  Superior Court on February 28, 2012. (ECF No. 16 at 3-79.) The petition was denied on

8  March 16, 2012. (Answer, Ex. B.)   Petitioner then filed a petition for writ of habeas

9  corpus with the California Supreme Court on November 8, 2012. (ECF No. 16 at 81-

10  159.) The petition was denied on January 16, 2013. (ECF No. 24 at 5.)

11    Petitioner filed his federal habeas petition on July 12, 2012. (Pet., ECF No. 1.)

12  Respondent filed an answer to the petition on January 24, 2013, and a supplement to

13  the answer on February 5, 2013. (Answer & Supp. Answer, ECF Nos. 17, 24.) Petitioner

14  filed a traverse on March 25, 2013. (Traverse, ECF No. 27.)

15    Petitioner raised thirteen grounds for relief stating the following claims: 1) that the

16  prosecution committed misconduct by presenting testimony at closing that was

17  misleading or not based on evidence in the record; 2) that co-defendant's counsel made

18  improper comments during his opening statement about the gun found in Petitioner's

19  room being the murder weapon; 3) that the prosecution engaged in improper conduct by

20  insinuating that a defense witness was lying; 4) that the trial court committed misconduct

21  by refusing a jury request for a copy of a penal code provision; 5) that his due process

22  was violated based on false accusations made by the prosecution; 6) that counsel was

23  ineffective for failing to investigate or call witnesses; 7) the trial court erred in denying

24  Petitioner's right to sever the trial from his co-defendant; 8) Petitioner was prejudiced by

25  co-defendant's counsel's comment on Petitioner's decision not to testify; 9) Petitioner

26  was denied his right to testify in his own defense; 10) the trial court erred in instructing

27  the jury to view Petitioner's statements with caution; 11) the trial court violated his rights

28  to confrontation in refusing Petitioner's request to cross-examine his co-defendant; 12)

the trial court instruction that the state need not prove motive with regard to the street terrorism charge prejudiced Petitioner by lowering the burden of proof required; and 13) cumulative error. (Pet. at 7-21.)

## II.   STATEMENT OF THE FACTS[1]

FACTUAL AND PROCEDURAL SUMMARY

Morales was shot to death at approximately 3:30 p.m. on April 6, 2004. He was 16 years old. Jesus Elizarraraz had known Morales for a year or two and they were close friends.

On April 6, Elizarraraz, Morales, and Villanueva headed to a Modesto shopping mall around noon to "hang out and shop." They did not have any alcohol, drugs, guns, billy clubs, or any other weapons with them. The three spent about an hour at the mall and then left and headed to a taco stand to get something to eat. It was about 3:00 p.m.

After they pulled into the parking lot of the taco stand, Elizarraraz noticed a car pull up to the red light at the corner; the driver gave Elizarraraz a "mean look." Elizarraraz identified Hernandez as the driver and said Hernandez yelled something, but there was too much traffic noise to make out the words.

The three friends got their food and sat down at an outside table to eat. About five minutes later they saw Hernandez's car, which was "full" of people, turn into the lot. The four occupants of the car got out and began walking toward Elizarraraz, Morales, and Villanueva. When the four men approached, Elizarraraz and his friends began walking away because they felt "threatened."

Elizarraraz and his friends were backing away because "[w]e didn't want to turn our backs towards them." As the four men got closer, Villanueva began to run; Elizarraraz and Morales were face to face with the four men. Two of the men with Hernandez took off after Villanueva. As Villanueva was running away, one of the assailants hit him in the back of the head with "some kind of hard thing." After he was hit, Villanueva kept running. The blow to his head left him with a scar.

Hernandez and Lopez faced Elizarraraz and Morales. Elizarraraz identified Lopez at trial. Hernandez pointed a gun in Elizarraraz's face. Lopez asked, "Are you ready for this?" A fist fight then broke out between Morales and Lopez. Hernandez turned his attention to the fist fight and Elizarraraz took the opportunity to turn and run. When he got near the bathrooms to the taco shop, Elizarraraz heard three or four gunshots. He could not see who fired because he had his back to the fight as he ran away. After he heard the shots, Elizarraraz climbed onto the roof of the bathrooms and heard Hernandez say, "We've got one of them, let's get out of here."

---

[1] The Fifth District Court of Appeal's summary of the facts in its June 28, 2011 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

Villanueva also heard the shots, but he did not see who fired them. Villanueva remembered Hernandez was wearing a red jersey.

While on the roof, Elizarraraz saw all four assailants run back to their car and climb in; he also saw Hernandez place something under the seat. Hernandez drove away with the other three passengers.

Elizarraraz went to help Morales, who was bleeding. Villanueva returned to help Morales, as did others at the scene. Someone called for the police and an ambulance, and both arrived shortly.

Elizarraraz acknowledged "hanging around" Sureno gang members and that the Sureno color was blue. He denied knowing that Morales or Villanueva were gang members. Modesto is known as a Norteno town; the Norteno gang color is red; Morales was wearing blue the day of the shooting. After the shooting, Elizarraraz moved out of state. The prosecution paid for his travel and lodging expenses so he could return and testify.

Villanueva acknowledged he had served time in prison for two weapons offenses and that he was on parole at the time of trial for a gang-related gun possession offense. He stated he began carrying a gun after Morales was shot. Villanueva acknowledged that he and Morales were Sureno gang members.

Modesto Police Officer David Watson stopped Hernandez's car shortly after the shooting. Modesto Police Office Jason Stewart handcuffed Hernandez and noticed his hands were "really wet and cold," "like if you're rinsing your hands off and didn't dry them."

A search of Hernandez's car revealed a bicycle security chain and lock. A search of Lopez's home revealed a BB gun, a .22-caliber handgun, and .22-caliber ammunition. It could not be determined conclusively if the .22-caliber bullets recovered from Morales's body had been fired by the .22-caliber gun recovered from Lopez's home.

Villanueva selected Lopez's picture from a photographic lineup. Elizarraraz and Villanueva made in-field identifications of Hernandez.

Ed Campbell, then a Stanislaus County sheriff's detective, interviewed Lopez. Lopez denied being at the taco stand at the time of the shooting. He claimed to have been visiting with a friend, R.M., the whole afternoon. He and R.M. had attended a quinceanera practice and then went to a tuxedo shop.

R.M.'s mother testified that she saw R.M. and Lopez talking outside the gate to her yard the afternoon of the shooting. R.M. testified he and Lopez spent the afternoon together. They talked after school for a while, but R.M. could not recall exactly how long, although he thought it may have been a few hours.

A gang expert, Froilan Mariscal, testified that Nortenos claim the color red and Surenos claim the color blue. Mariscal also testified that rival gangs were at "war" with each other, leading to killings. Morales was killed in an area of Modesto known as Norteno territory.

Hernandez was wearing a belt buckle with the letter "N" at the time of his arrest. He also had numerous gang tattoos and had a red bandanna tied around the steering column of his car. Hernandez had admitted to California Youth Authority officials that he was a Norteno and Surenos were his rivals.

Lopez's gang affiliations included being suspended from school for flashing gang signs, engaging in fights with known Norteno gang members, and committing a theft with known Norteno gang members. Lopez had been arrested for theft, prowling, conspiracy, and obstructing an officer in connection with a theft committed with a Norteno gang member.

Hernandez testified in his own behalf. He admitted gang membership. Hernandez said he saw Lopez standing over Morales, with his arm outstretched, and then heard five or six shots. Hernandez claimed Lopez was the shooter and that he, Hernandez, did not know Lopez had a gun with him.

Lopez did not testify.

The jury found Lopez guilty of one count of murder with a gang enhancement and a gun enhancement in the death of Morales. The jury also found him guilty of assault with a deadly weapon and a gang enhancement for the attack on Villanueva. Lopez also was found guilty of the substantive offense of active participation in a criminal street gang.

The trial court sentenced Lopez to a term of 15 years to life for the murder conviction, plus an additional 25 years to life for the gun enhancement. On the assault, the trial court imposed the midterm of three years, plus five years for the gang enhancement, both to be served consecutively to the murder conviction. A two-year term for the active participation in a criminal street gang offense was ordered stayed.

People v. Lopez, 2011 Cal. App. Unpub. LEXIS 4808, 2-7 (Cal. App. 5th Dist. June 28, 2011).

## II.   **DISCUSSION**

### A.   **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly,

1    the Court has jurisdiction over the action.

2    **B.**    <u>**Legal Standard of Review**</u>

3    On April 24, 1996, Congress enacted the Antiterrorism and Effective Death

4 Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus

5 filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, 326 (1997); <u>Jeffries v. Wood</u>,

6 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of

7 the AEDPA; thus, it is governed by its provisions.

8    Under AEDPA, an application for a writ of habeas corpus by a person in custody

9 under a judgment of a state court may be granted only for violations of the Constitution

10 or laws of the United States. 28 U.S.C. § 2254(a); <u>Williams v. Taylor</u>, 529 U.S. at 375 n.

11 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in

12 state court proceedings if the state court's adjudication of the claim:

13
14      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

15
16      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

17 28 U.S.C. § 2254(d).

18    1.    <u>Contrary to or an Unreasonable Application of Federal Law</u>

19    A state court decision is "contrary to" federal law if it "applies a rule that

20 contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts

21 that are materially indistinguishable from" a Supreme Court case, yet reaches a different

22 result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) citing <u>Williams</u>, 529 U.S. at 405-06.

23 "AEDPA does not require state and federal courts to wait for some nearly identical

24 factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that

25 even a general standard may be applied in an unreasonable manner" <u>Panetti v.</u>

26 <u>Quarterman</u>, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The

27 "clearly established Federal law" requirement "does not demand more than a 'principle'

28 or 'general standard.'" <u>Musladin v. Lamarque</u>, 555 F.3d 830, 839 (2009).  For a state

1    decision to be an unreasonable application of clearly established federal law under §

2    2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

3    (or principles) to the issue before the state court.  Lockyer v. Andrade, 538 U.S. 63, 70-

4    71 (2003).  A state court decision will involve an "unreasonable application of" federal

5    law only if it is "objectively unreasonable."  Id. at 75-76, quoting Williams, 529 U.S. at

6    409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

7    Court further stresses that "an *unreasonable* application of federal law is different from

8    an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529

9    U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

10   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

11   correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541

12   U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

13   have in reading outcomes in case-by-case determinations."  Id.; Renico v. Lett, 130 S.

14   Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

15   Federal law for a state court to decline to apply a specific legal rule that has not been

16   squarely established by this Court."  Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

17   (2009), quoted by Richter, 131 S. Ct. at 786.

18          2.    Review of State Decisions

19          "Where there has been one reasoned state judgment rejecting a federal claim,

20   later unexplained orders upholding that judgment or rejecting the claim rest on the same

21   grounds."  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

22   "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

23   (9th Cir. 2006).   Determining whether a state court's decision resulted from an

24   unreasonable legal or factual conclusion, "does not require that there be an opinion from

25   the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

26   "Where a state court's decision is unaccompanied by an explanation, the habeas

27   petitioner's burden still must be met by showing there was no reasonable basis for the

28   state court to deny relief."  Id. ("This Court now holds and reconfirms that § 2254(d) does

not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.   Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional

errors, however, do not require that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

## III.    REVIEW OF PETITION

### A.    Claims 1 through 5 – Procedural Bar

Respondent asserts that the first through fifth claims presented in the petition are subject to procedural default. Petitioner presented the claims in his petition for writ of habeas corpus filed before California Supreme Court. (Lodged Doc. 16 at 81-159.)

In its decision, the California Supreme Court denied the petition based on a state procedural bar. The court addressed Petitioner's claims as follows:

> The petition for writ of habeas corpus is denied. (See In re Dixon (1953) 41 Cal.2d 756, 759.)

(ECF No. 24 at 5.)

Based on the case cited by the California Supreme Court, it appears that the California Supreme Court found the claims procedurally barred for failure to raise the claims on direct appeal. See Lee v. Jacquez, 788 F.3d 1124, 1126 (9th Cir. 2015).

#### 1.    Legal Framework for Procedural Default

The Supreme Court recently described the legal requirements that prevent review of claims that were rejected on state court grounds:

> "A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " Kindler, 558 U.S., at 55, 130 S.Ct., at 615 (quoting Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits. See Sykes, 433 U.S., at 81-82, 90, 97 S.Ct. 2497.
>
> ***

1
2
3
4
5
6

> To qualify as an "adequate" procedural ground, a state rule must be "firmly established and regularly followed." <u>Kindler</u>, 558 U.S., at 60, 130 S.Ct., at 618 (internal quotation marks omitted). FN4 [omitted] "[A] discretionary state procedural rule," we held in <u>Kindler</u>, "can serve as an adequate ground to bar federal habeas review." <u>Ibid.</u> A "rule can be 'firmly established' and 'regularly followed,'" <u>Kindler</u> observed, "even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." <u>Ibid.</u> California's time rule, although discretionary, meets the "firmly established" criterion, as <u>Kindler</u> comprehended that requirement.

7

<u>Walker v. Martin</u>,      U.S.    , 131 S. Ct. 1120, 1127-1128, 179 L. Ed. 2d 62 (2011)

8

(abrogating <u>Townsend v. Knowles</u>, 562 F.3d 1200 (9th Cir. 2009)).

9

        2.      Failure to Raise Claims on Direct Review

10

Claims one through five are potentially procedurally barred by the California

11

Supreme Court's decision to deny state habeas review because the claims were not

12

raised on direct review.

13

Here, the California Supreme Court applied the <u>Dixon</u> rule to deny the claims in

14

the petition. <u>Dixon</u> states that:

15
16
17

> [t]he general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claims errors could have been, but were not, raised upon a timely appeal from the judgment of conviction.

18

41 Cal. 2d at 759. Thus, pursuant to <u>Dixon</u>, a California court will not review the merits of

19

a claim in a state habeas proceeding if it could have been raised in a timely appeal but

20

was not. The Court must determine whether the <u>Dixon</u> rule is an adequate and

21

independent state rule to serve as a procedural bar.

22

        a.      Is the <u>Dixon</u> Rule Adequate?

23

After the parties provided briefing, including Respondent's arguments that claims

24

one through five are procedurally barred, the Ninth Circuit decided <u>Lee v. Jacquez</u>, 788

25

F.3d 1124, 1134 (9th Cir. 2015). In <u>Lee</u>, the Ninth Circuit concluded that the State failed

26

to prove the adequacy of the procedural bar in <u>Dixon</u>. <u>Id.</u>, <u>see also</u> <u>McKinney v.</u>

27

<u>Chappell</u>, 610 F. App'x 630, 631 (9th Cir. 2015). Although it appears Petitioner has not

28

provided specific evidence of <u>Dixon</u>'s inadequacy, after <u>Lee</u>, it is not petitioner's burden

1  to do so. McKinney, 610 F. App'x at 631. In light of Lee, Dixon is not an adequate state

2  procedural bar in this case. Based on the unsettled state of the Dixon procedural bar, the

3  interests of judicial economy weigh in favor of reaching the merits of these claims. See

4  Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not

5  infrequently more complex than the merits issues presented by the appeal, so it may well

6  make sense in some instances to proceed to the merits if the result will be the same."),

7  citing Lambrix v. Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771

8  (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be

9  resolved first; only that it ordinarily should be."). Accordingly, the Court shall address the

10  merits of each of Petitioner's claims below.

11  **B.    Claim 1 – Prosecutorial Misconduct**

12  Petitioner claims that the prosecutor committed misconduct by presenting

13  argument at closing that the gun was the murder weapon when the evidence did not

14  support such a proposition. (See Pet. at 7-8.)

15  1.    State Court Decision

16  Petitioner presented this claim by way of petition to the Stanislaus County

17  Superior Court. (ECF No. 16.) The claim was denied by the superior court and denied in

18  subsequent habeas petition by the California Supreme Court. (See Answer, Ex. B.)

19  Rather than address the merits of Petitioner's claim, the California Supreme Court

20  denied the claim based on the Dixon bar for failure to raise the claim on direct appeal.

21  (Id.) The state court decision did not address the merits of the claim. Therefore, this

22  Court, under § 2254(d), must determine what arguments or theories could have

23  supported the state court's decision and determine whether it is possible fairminded

24  jurists could disagree that those arguments or theories are inconsistent with Supreme

25  Court law. Richter, 131 S. Ct. at 786. "A state court summary denial is an unreasonable

26  application of Supreme Court precedent only if there was no reasonable basis, for the

27  decision in light of the arguments or theories that could have supported the state court's

28  decision." Andrews v. Davis, 798 F.3d 759, 774 (9th Cir. 2015) (citing Richter).

1                      2.      Applicable Legal Principles

2          A criminal defendant's due process rights are violated when a prosecutor's

3    misconduct renders a trial fundamentally unfair. Parker v. Matthews,     U.S.   , 132 S.Ct.

4    2148, 2153, 183 L. Ed. 2d 32 (2012) (per curiam); Darden v. Wainwright, 477 U.S. 168,

5    181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986). Claims of prosecutorial misconduct are

6    reviewed "'on the merits, examining the entire proceedings to determine whether the

7    prosecutor's [actions] so infected the trial with unfairness as to make the resulting

8    conviction a denial of due process.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995)

9    (citation omitted); see also Greer v. Miller, 483 U.S. 756, 765, 107 S. Ct. 3102, 97 L. Ed.

10   2d 618 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed.

11   2d 431 (1974); Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010). Relief on such

12   claims is limited to cases in which the petitioner can establish that prosecutorial

13   misconduct resulted in actual prejudice. Darden, 477 U.S. at 181-83. See also Towery,

14   641 F.3d at 307 ("When a state court has found a constitutional error to be harmless

15   beyond a reasonable doubt, a federal court may not grant habeas relief unless the state

16   court's determination is objectively unreasonable"). Prosecutorial misconduct violates

17   due process when it has a substantial and injurious effect or influence in determining the

18   jury's verdict. See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

19                      3.      Analysis

20          First, Respondent contends that this claim is not properly exhausted as Petitioner

21   had not exhausted his state court remedies at the time that the federal habeas petition

22   was filed. Petitioner has since exhausted his state court remedies. However, rather than

23   address what is possibly a difficult exhaustion analysis (including whether Petitioner's

24   claims were technically procedurally defaulted), the Court will address the claims on the

25   merits. See 28 U.S.C. § 2254(b)(2) ("An application for writ of habeas corpus may be

26   denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

27

28

1  available in the courts of the State.").[2]

2  　　　Petitioner contends that the prosecution made several misleading statements

3  during closing argument that the gun found in Petitioner's room was the murder weapon

4  and that Petitioner committed the murder. As Petitioner notes, and the California Court of

5  Appeal confirms, the state forensic expert found testing on the gun and bullets to be

6  inconclusive. The expert could not rule out that the gun was the one used, and further

7  confirmed that the gun was the correct caliber as the one used in the shooting. (See

8  Reptr. Tr. at 628-639.) During closing, the prosecution described some of the experts

9  analysis and stated:

10  　　　Now, what conclusion can you draw from that analysis? This gun with
    heavy lead fouling in the barrel fired the bullets that killed Danny Morales,
11  　　　.22 long rifle hollow point bullets.

12  Id. at 1777. Petitioner also complains that the prosecution's comments that "Based on

13  what you heard and the analysis of the gun and the bullets, you know already Robert

14  Lopez is the shooter, Robert Lopez is guilty of murder"; "Now, I'm not going to go over

15  every single detail of the gang lifestyle of both defendants, but you heard testimony,

16  starting off with Mr. Lopez, he's young, he's 16 when he murders Danny Morales";

17  "Hernandez gives the gun to Bobby Lopez, Bobby Lopez unloads on Danny Morales, the

18  grim statistic that you're hearing the case on."; "…Detective Copeland who got the

19  bullets from the coroner, from the body of Danny Moralez, booked them in, the gun trail

20  that we already talked about from finding the gun underneath Bobby Lopez's mattress

21  from the bullets from the body." (Id. at 1777, 78, 84-85, 99, 1801.)

22  　　　Upon review of the closing statements of the prosecution, the Court does not find

23  that the prosecution committed misconduct. The statements did not misrepresent the

24  testimony presented at trial. While the prosecution's theory was that the weapon found in

25  Petitioner's room was the murder weapon, the prosecution did not argue that the

26

27  　　　[2] Respondent also asserts that claims two through six were not properly exhausted and should be
    dismissed. The Court shall address the merits of each of the claims rather than address exhaustion for
28  each of the claims for the reasons previously stated.

1   forensic evidence supported a finding that it was the weapon used. The prosecution

2   instead relied on portions of the expert's analysis to set forth his contention that it was

3   indeed the murder weapon. Based on the fact that Petitioner and his accomplice were

4   identified, and that a weapon of the same caliber used at the shooting was found in

5   Petitioner's room, the prosecution's argument and conclusions regarding the evidence

6   did not so infected the trial with unfairness as to make the resulting conviction a denial of

7   due process.

8       Further, any potential prejudice from the statements was mitigated by the

9   instructions to the jury that the only evidence to be considered was that of the sworn

10  testimony of witnesses, and that argument by counsel is not to be considered evidence.

11  (Reptr. Tr. at 1876.) The instance of misconduct about which Petitioner complains was

12  not so unfair as to constitute a due process violation. Towery v. Schriro, 641 F.3d 300,

13  306 (9th Cir. 2010).

14      The arguments or theories that could have supported the state court's decision

15  rejecting these claims of prosecutorial misconduct are not "so lacking in justification that

16  there was an error well understood and comprehended in existing law beyond any

17  possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Accordingly,

18  Petitioner is not entitled to federal habeas relief on this claim.

19      **C.    Claim 2 – Improper Argument by Co-Defendant's Counsel**

20      Petitioner next claims that his co-defendant's counsel committed misconduct by

21  presenting argument in his opening statement that the gun found in Petitioner's bedroom

22  was the murder weapon. (See Pet. at 7, 9.) Specifically, co-defendant's counsel states

23  "and for sure you'll hear this gun was the one that was used," and "you'll know for sure

24  this was the gun." (Id.)

25          1.    State Court Decision

26      Like Petitioner's first claim, the California Supreme Court denied the claim based

27  on the Dixon bar for failure to raise the claim on direct appeal. Therefore, this Court,

28  under § 2254(d), must determine what arguments or theories could have supported the

1  state court's decision and determine whether it is possible fairminded jurists could

2  disagree that those arguments or theories are inconsistent with Supreme Court law.

3  Richter, 131 S. Ct. at 786.

4            2.    Analysis

5       With respect to Petitioner's due process claim, the United States Supreme Court

6  has held that habeas corpus relief should be granted where constitutional errors have

7  rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375 (2000). No

8  Supreme Court precedent has made clear, however, that admission of irrelevant or

9  overly prejudicial evidence can constitute a due process violation warranting habeas

10 corpus relief. See Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The

11 Supreme Court has made very few rulings regarding the admission of evidence as a

12 violation of due process. Although the Court has been clear that a writ should be issued

13 when constitutional errors have rendered the trial fundamentally unfair, it has not yet

14 made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes

15 a due process violation sufficient to warrant issuance of the writ." (citation omitted)).

16      Even assuming that improper admission of evidence under some circumstances

17 rises to the level of a due process violation warranting habeas corpus relief under

18 AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

19 precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

20 as to violate due process only if "there are *no* permissible inferences the jury may draw

21 from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis

22 in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

23 also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

24 heavy burden in showing a due process violation based on an evidentiary decision.").

25 For the same reasons set forth in claim one, the argument made by co-defendant's

26 counsel was just that, argument, not testimony. In stating that "you'll hear this was the

27 gun used," no reasonable juror would think that defendant's counsel was attempting to

28 testify as to that fact. Instead, reasonable jurors would realize that counsel was setting

1   forth an argument that the testimony at trial proved his assertion that the gun was the

2   murder weapon.

3       In any event, defendant's co-counsel's opening argument did not deny Petitioner

4   a fair trial. After a review of the record, this Court finds that the trial court's admission of

5   the opening argument would not have had a "substantial and injurious effect" on the

6   verdict. Brecht, 507 U.S. at 623. Any potential prejudice from the statements was

7   mitigated by the instructions to the jury that the only evidence to be considered was that

8   of the sworn testimony of witnesses, and that argument by counsel is not to be

9   considered evidence. (Reptr. Tr. at 1876.)

10      The arguments or theories that could have supported the state court's decision

11  rejecting these claims of prosecutorial misconduct are not "so lacking in justification that

12  there was an error well understood and comprehended in existing law beyond any

13  possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Accordingly,

14  Petitioner is not entitled to federal habeas relief on this claim.

15          **D.    Claim 3 – Prosecutorial Misconduct**

16      Petitioner's third claim is that the prosecution insinuated that witness Ruben

17  Leonard was lying on the stand for Petitioner's benefit. (See Pet. at 7, 10.) Petitioner

18  contends that the prosecution's question, "Do you feel any loyalty still toward Bobby

19  Lopez or Manuel Hernandez?" was improper. (See Reptr. Tr. at 714.) The court

20  sustained an objection to the question as compound, and the witness did not answer the

21  question. (Id.)

22          1.    State Court Decision

23      Like Petitioner's first claim, the California Supreme Court denied the claim based

24  on the Dixon bar for failure to raise the claim on direct appeal. Therefore, this Court,

25  under § 2254(d), must determine what arguments or theories could have supported the

26  state court's decision and determine whether it is possible fairminded jurists could

27  disagree that those arguments or theories are inconsistent with Supreme Court law.

28  Richter, 131 S. Ct. at 786.

2.     Analysis

The Court previously set forth the standard for prosecutorial misconduct under claim one - a criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. See Parker v. Matthews, 132 S.Ct. 2148, 2153.

Upon review of the question at issue, the Court does not find that the prosecution committed misconduct. The question at issue attempted to elicit whether the witness had any bias or affiliation towards Petitioner that might affect the witness' credibility. Regardless, the question was objected to, and the witness never answered the question. Any potential prejudice from the statements was mitigated by the instructions to the jury that the only evidence to be considered was that of the sworn testimony of witnesses, and that statements by counsel are not to be considered evidence. (Reptr. Tr. at 1876.) The instance of misconduct about which Petitioner complains was not so unfair as to constitute a due process violation. Towery v. Schriro, 641 F.3d 300, 306 (9th Cir. 2010).

The arguments or theories that could have supported the state court's decision rejecting these claims of prosecutorial misconduct are not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**E.     Claim 4 – Instructional Error**

Petitioner's third claim is the jury was improperly instructed thereby depriving Petitioner of the right to be found guilty of every element of the crime charged. (See Pet. at 11.) Petitioner contends that the jury requested a copy of a relevant penal code relating to his gang participation enhancements, but that the request was denied. (Id.) Petitioner does not provide citation to the record in support of the claim.

1.     State Court Decision

Like Petitioner's first claim, the California Supreme Court denied the claim based on the Dixon bar for failure to raise the claim on direct appeal. Therefore, this Court,

17

1  under § 2254(d), must determine what arguments or theories could have supported the

2  state court's decision and determine whether it is possible fairminded jurists could

3  disagree that those arguments or theories are inconsistent with Supreme Court law.

4  Richter, 131 S. Ct. at 786.

5          2.   Analysis

6          To the extent Petitioner alleges the trial court improper instructions, or failure to

7  instruct violated state law, Petitioner's claim is not cognizable in this proceeding. The

8  Supreme Court has held that a challenge to a jury instruction solely as an error under

9  state law does not state a claim cognizable in federal habeas corpus proceedings.

10  Estelle v. McGuire, 502 U.S. at 71-72. A claim that an instruction was deficient in

11  comparison to a state model or that a trial judge incorrectly interpreted or applied state

12  law governing jury instructions does not entitle one to relief under § 2254, which requires

13  violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a),

14  2241(c)(3). Accordingly, to the extent that Petitioner raises state law claims, his claims

15  should be dismissed.

16          Further, the absence of the instruction did not result in any fundamental

17  unfairness. The only basis for federal collateral relief for instructional error is that an

18  infirm instruction or the lack of instruction by itself so infected the entire trial that the

19  resulting conviction violates due process. Estelle v. McGuire, 502 U.S. at 71-72; Cupp v.

20  Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); see Donnelly v.

21  DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) (it must be

22  established not merely that the instruction is undesirable, erroneous or even "universally

23  condemned," but that it violated some right guaranteed to the defendant by the

24  Fourteenth Amendment). The Court in Estelle emphasized that the Court had very

25  narrowly defined the category of infractions that violate fundamental fairness, and that

26  beyond the specific guarantees enumerated in the Bill of Rights, the Due Process

27  Clause has limited operation. 502 U.S. at 72-73.

28          Petitioner only alleges that the court failed to provide the jury a copy of the penal

18

1   code relating to gang enhancements, and based on the failure to provide the jury a copy

2   of the penal code section, he was denied the right to have the jury find him guilty of

3   every element of the crime charged. However, Petitioner has not shown that he was

4   prejudiced from the failure to provide the penal code section, or that absence of the code

5   section resulted in fundamental unfairness. The trial court instructed the jury regarding

6   the gang enhancement, and Petitioner does not contend that the court's instruction was

7   wrong or misleading. (Reptr's Tr. at 1900-02.) It is unclear how providing the jury with the

8   statutory provisions would have materially assisted the jury in in determining whether to

9   find Petitioner guilty of the gang enhancements.

10      Petitioner has not shown that he suffered any fundamental unfairness or that the

11   omission had any substantial or injurious effect or influence in determining the jury's

12   verdict. Accordingly, it will be recommended that the Court deny Petitioner's claim

13   concerning the failure to provide the jury the relevant penal code relating to his gang

14   participation. The arguments or theories that could have supported the state court's

15   decision rejecting these claims of prosecutorial misconduct are not "so lacking in

16   justification that there was an error well understood and comprehended in existing law

17   beyond any possibility for fairminded disagreement." <u>Richter</u>, 131 S. Ct. at 786-87.

18   Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

19      **F.      Claim 5 – Prosecutorial Misconduct**

20      Petitioner's fifth claim is similar to his first claim.   In Petitioner's first claim, he

21   contended that the prosecutor committed misconduct by presenting argument at closing

22   that the gun was the murder weapon when the evidence did not support such a

23   proposition. (<u>See</u> Pet. at 7-8.) In Petitioner's fifth claim, he asserts that the his due

24   process was denied by the prosecution's argument in opposition to a motion for new trial

25   in which the prosecution argued that there was sufficient evidence that Petitioner

26   committed the offense and that the gun found in his room was the murder weapon. (Pet.

27   at 12.)

28

1

### 1.   State Court Decision

Like Petitioner's first claim, the California Supreme Court denied the claim based on the <u>Dixon</u> bar for failure to raise the claim on direct appeal. Therefore, this Court, under § 2254(d), must determine what arguments or theories could have supported the state court's decision and determine whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with Supreme Court law. <u>Richter</u>, 131 S. Ct. at 786.

### 2.   Applicable Legal Principles

As described in claim one, a criminal defendant's due process rights are violated when a prosecutor's misconduct renders a trial fundamentally unfair. <u>Parker v. Matthews</u>, 132 S.Ct. at 2153. Relief on such claims is limited to cases in which the petitioner can establish that prosecutorial misconduct resulted in actual prejudice. <u>Darden</u>, 477 U.S. at 181-83.

### 3.   Analysis

Upon review of the prosecution's post-trial briefing, the Court does not find that the prosecution committed misconduct. The statements did not misrepresent the testimony presented at trial. The prosecution was arguing that there was sufficient evidence at trial to support a theory that the weapon found in Petitioner's room was the murder weapon, and that Petitioner committed the murder. Specifically, the paragraph of the opposition brief that Petitioner challenges begins by stating, "The evidence in this case showed…," and concludes with, "[t]here was sufficient evidence presented to the jury to convict [Petitioner] of murder…" (Clerk's Tr. at 634.) There is no merit to Petitioner's contention that the prosecution's argument was improper or otherwise violated his due process rights. As described, even though the forensic testing could not determine whether the gun was the murder weapon, the prosecution presented reasonable argument based on the facts in evidence that Petitioner committed the murder and the gun found in his room was the murder weapon.

The arguments or theories that could have supported the state court's decision

1   rejecting these claims of prosecutorial misconduct or due process are not "so lacking in

2   justification that there was an error well understood and comprehended in existing law

3   beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

4   Accordingly, Petitioner is not entitled to federal habeas relief on his fifth claim.

5             **G.    Claim 6 – Ineffective Assistance of Counsel**

6        Petitioner's sixth claim is for ineffective assistance of counsel. He asserts that trial

7   counsel was ineffective for failing to properly investigate and present alibi witnesses

8   David Machuca and Andres Esparza whom Petitioner asserts could have presented

9   testimony that he was with them getting fitted for tuxedos for an upcoming quinceanera

10  at the time of the shooting. (Pet. at  13.)

11                 1.    State Court Decision

12       Like Petitioner's first claim, the California Supreme Court denied the claim based

13  on the Dixon bar for failure to raise the claim on direct appeal. Therefore, this Court,

14  under § 2254(d), must determine what arguments or theories could have supported the

15  state court's decision and determine whether it is possible fairminded jurists could

16  disagree that those arguments or theories are inconsistent with Supreme Court law.

17  Richter, 131 S. Ct. at 786.[3]

18                 2.    Applicable Legal Principles

19       The law governing ineffective assistance of counsel claims is clearly established

20  for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d).

21  Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas

22  corpus alleging ineffective assistance of counsel, the Court must consider two factors.

23  Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

24  v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's

25  _____

26       [3] As Respondent correctly notes, the superior court denied this claim in Petitioner's habeas
    petition by stating "As to the claim of ineffective assistance of counsel, Petitioner has failed to demonstrate

27  prejudice." (Answer, Ex. B.) However, the Supreme Court, in denying his habeas petition, only invoked the
    Dixon procedural bar. It is therefore unclear if the look through presumption should apply. Regardless, as

28  explained in the Court's analysis, the claim fails.

1   performance was deficient, requiring a showing that counsel made errors so serious that

2   he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.

3   Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell

4   below an objective standard of reasonableness, and must identify counsel's alleged acts

5   or omissions that were not the result of reasonable professional judgment considering

6   the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348

7   (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court

8   indulges a strong presumption that counsel's conduct falls within the wide range of

9   reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v.

10  Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

11      Second, the petitioner must demonstrate that "there is a reasonable probability

12  that, but for counsel's unprofessional errors, the result ... would have been different."

13  Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious

14  as to deprive defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  The

15  Court must evaluate whether the entire trial was fundamentally unfair or unreliable

16  because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United

17  States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

18      A court need not determine whether counsel's performance was deficient before

19  examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.

20  Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any

21  deficiency that does not result in prejudice must necessarily fail.  However, there are

22  certain instances which are legally presumed to result in prejudice, e.g., where there has

23  been an actual or constructive denial of the assistance of counsel or where the State has

24  interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at

25  659, and n. 25 (1984).

26      As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the

27  standard for ineffective assistance of counsel in federal habeas is extremely difficult:

28      The pivotal question is whether the state court's application of the

22

1
2
3
4
5
6

Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

7
8
9
10
11
12

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

13 Harrington v. Richter, 131 S. Ct. at 785-86.

14 "It bears repeating that even a strong case for relief does not mean the state

15 court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, §

16 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

17 already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus

18 from a federal court, a state prisoner must show that the state court's ruling on the claim

19 being presented in federal court was so lacking in justification that there was an error

20 well understood and comprehended in existing law beyond any possibility for fairminded

21 disagreement." Id. at 786-87.

22 Accordingly, even if Petitioner presents a strong case of ineffective assistance of

23 counsel, this Court may only grant relief if no fairminded jurist could agree on the

24 correctness of the state court decision.

25 3. Analysis

26 Petitioner contends that counsel failed to properly research his alibi and interview

27 or present witnesses David Machuca and Andres Esparza at trial. Petitioner argues that

28 the witnesses would present testimony that Petitioner was at a bridal shop where the

1    witnesses were getting fitted for tuxedos at the time of the shooting.

2         At trial, the prosecution called Ruben Moreno as a witness. (See Reptr's Tr. at

3    706-715.) On direct questioning from the prosecution, he stated that he and Petitioner

4    stayed at his house after school on the day of the shooting and did not leave. (Id.)

5    However, Petitioner's counsel recalled him as witness, at which time Moreno testified

6    that he went to the bridal shop with David Machuca, Andres Esparza, and Petitioner. (Id.

7    at 786-87.) Further, during his closing argument, Defense counsel spent considerable

8    time describing the alibi evidence presented by Moreno. (Id. at 1844-47.) Defense

9    counsel argued how Moreno, a prosecution witness, provided testimony that was more

10   favorable to the defense. (Id.)

11        Petitioner has not presented any evidence regarding what additional evidence

12   either Machuca or Esparza could have presented to benefit Petitioner's case. While

13   Petitioner argues that counsel failed to investigate, it is clear from his closing statements

14   that he was aware of, and argued the bridal shop alibi at trial. Further, this Court must

15   provide counsel strong deference with regard to trial strategy, such as deciding which

16   witnesses to call. The defense presented the alibi theory at trial without the testimony of

17   Machuca or Esparza, and while Petitioner argues that the witnesses should have been

18   called, it is very possible that counsel had legitimate reasons why not to call them.

19   Petitioner has not shown that counsel's conduct fell below an objective standard of

20   reasonableness, or that he was prejudiced by counsel's conduct. The jury was

21   presented with evidence and argument of the alibi, but in finding Petitioner guilty, must

22   not have found the alibi defense credible.

23        The arguments or theories that could have supported the state court's decision

24   rejecting Petitioner's claim of ineffective assistance of counsel are not "so lacking in

25   justification that there was an error well understood and comprehended in existing law

26   beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

27   Accordingly, Petitioner is not entitled to federal habeas relief on his sixth claim.

28

### H.   Claim 7 – Denial of Motion to Sever Trial

Petitioner's seventh claim is that the trial court's denial of his motion to sever the trial from that of his co-defendant Manuel Hernandez violated his federal due process rights. (See Pet. at 14-15.)

####     1.   State Court Decision

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in subsequent petition for review by the California Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the California Court of Appeal explained:

**I. Motion to Sever**

Prior to trial, Lopez moved to sever his trial from that of his codefendant, Hernandez. Lopez argued the trials should be severed because (1) he and Hernandez had "antagonistic defenses," and (2) evidence of Hernandez's gang affiliation was overwhelming, but evidence to support Lopez's gang affiliation was "weak." No mention was made of an alibi defense. The trial court denied the severance motion.

Lopez renewed his motion to sever on the fourth day of trial. The basis of the motion was the gang evidence, particularly pretrial statements made by Hernandez, and the claim of antagonistic defenses in that each defendant would be claiming the other was the shooter. The trial court again denied the motion to sever. The trial court also ruled that no witness was to refer either directly or indirectly to the pretrial statements made by Hernandez, which Lopez claimed, if admissible, would be a basis for severance. Again, no mention of an alibi defense was made in arguing for

severance.

On appeal, Lopez contends the trial court violated his state and federal due process rights when it denied his motions to sever his trial.

**Standard of review**

We review a trial court's denial of a severance motion for abuse of discretion based on the facts as they appeared at the time the court ruled on the motion. (<u>People v. Hardy</u> (1992) 2 Cal.4th 86, 167 (<u>Hardy</u>).) If the court's ruling was proper at the time it was made, a reviewing court may reverse a judgment only on a showing that a joint trial "'resulted in "gross unfairness" amounting to a denial of due process.' [Citation.]" (<u>People v. Mendoza</u> (2000) 24 Cal.4th 130, 162.) "Even if the court abused its discretion in refusing to sever, reversal is unwarranted unless, to a reasonable probability, defendant would have received a more favorable result in a separate trial." (<u>People v. Avila</u> (2006) 38 Cal.4th 491, 575; <u>see also</u> <u>People v. Coffman and Marlow</u> (2004) 34 Cal. 4th 1, 41.)

**Analysis**

Penal Code section 1098[4] provides in pertinent part: "When two or more defendants are jointly charged with any public offense, whether felony or misdemeanor, they must be tried jointly, unless the court order[s] separate trials." Our Legislature has thus "expressed a preference for joint trials. [Citations.]" (<u>People v. Boyde</u> (1988) 46 Cal.3d 212, 231.) But the trial court may, in its discretion, order separate trials "in the face of an incriminating confession, prejudicial association with codefendants, likely confusion resulting from evidence on multiple counts, conflicting defenses, or the possibility that at a separate trial a codefendant would give exonerating testimony." (<u>People v. Massie</u> (1967) 66 Cal.2d 899, 917, fns. omitted; see also § 1098.)

Defendants charged with common crimes involving common events and the same victims present a "'"classic" case'" for a joint trial. (<u>People v. Carasi</u> (2008) 44 Cal.4th 1263, 1296, 1297; <u>People v. Tafoya</u> (2007) 42 Cal.4th 147, 162.) Separate trials, however, may be ordered in the face of antagonistic defenses. "'"Antagonistic defenses do not per se require severance, even if the defendants are hostile or attempt to cast the blame on each other."'" (<u>Tafoya</u>, at p. 162.) If independent evidence against the moving defendant exists, antagonistic defenses do not compel severance. (<u>Ibid.</u>)

At the hearing on the motion to sever, Lopez's defense counsel argued that Lopez's defense would be that Hernandez was the killer and it was their understanding Hernandez's position would be that Lopez was the killer. Lopez's defense counsel also argued that evidence of Lopez's gang affiliation was minimal, that of Hernandez was substantial, and Lopez might be convicted "primarily because of the alleged gang purpose of this shooting." No mention was made during the hearing on the motion to sever that Lopez would be presenting an alibi defense.

Lopez contends that severance was justified because defense

---

[4] All further statutory references are to the Penal Code unless otherwise stated.

counsel argued antagonistic defenses. What Lopez fails to address, but was addressed by the trial court's instructions to the jury, is that it is irrelevant which one pulled the trigger—Lopez or Hernandez—as each is equally guilty of first degree murder pursuant to aider and abettor liability. "The aider and abettor doctrine merely makes aiders and abettors liable for their accomplices' actions as well as their own. It obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (People v. McCoy (2001) 25 Cal.4th 1111, 1120.) Based on the facts as presented by Lopez's defense counsel at the time the trial court ruled on the motion, there were not antagonistic defenses. (Ibid; Hardy, supra, 2 Cal.4th at p. 167.)

Lopez also claims, as an additional reason to sever his trial, that evidence of his gang affiliation was minimal and that of Hernandez extensive. Lopez's claims concerning the evidence are incomplete. Lopez had (1) been involved in two fights at his high school with Norteno gang members against Sureno gang members or others, (2) been suspended from school for flashing gang signs, (3) participated in a theft of jewelry with Norteno gang members, and (4) participated in another incident with a Norteno gang member that constituted prowling, theft, and obstruction of an officer. Expert testimony was presented that Lopez was an active participant in the Norteno criminal street gang.

Contrary to his assertion, Lopez's case was a classic case for a joint trial — both defendants faced equivalent charges arising from the same events and almost all the evidence was cross-admissible.

Also, as previously discussed, and as Lopez acknowledges, a motion to sever must be supported by adequate grounds existing at the time the motion is heard. (People v. Miranda (1987) 44 Cal.3d 57, 78; see People v. Cummings (1993) 4 Cal.4th 1233, 1286-1287, fn. 26.) If further developments occur during trial that a defendant believes justify severance, such as the availability of an alibi defense, the defendant must renew the motion to sever and assert the new grounds. Lopez never asserted in the trial court that the alibi defense constituted an antagonistic defense warranting severance. Accordingly, Lopez may not raise the issue on appeal

Furthermore, even if the trial court abused its discretion in refusing to sever the trials of Lopez and Hernandez, there is no reasonable probability Lopez would have received a more favorable result in a separate trial. Even if we were to exclude the testimony of Hernandez, there was significant and substantial evidence of Lopez's guilt.

Elizarraraz and Villanueva testified that as they were seated eating a meal at a taco stand, Lopez and Hernandez, along with two others, drove into the parking lot and stopped and then headed toward them in a threatening manner. When one of the four men approaching him reached into a pocket, Villanueva turned to run and was hit in the back of the head. Lopez and Hernandez were identified as two of the four men. Elizarraraz also testified that after Villanueva ran, Hernandez held a gun in Elizarraraz's face while Lopez attacked Morales. When Hernandez turned his back, Elizarraraz ran and shortly thereafter heard shots. Elizarraraz returned to find Morales bleeding from gunshot wounds.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Conclusion

In light of the statutory preference for joint trials (see § 1098), severance remains largely within the trial court's discretion. (People v. Bradford (1997) 15 Cal.4th 1229, 1314-1315 (Bradford); Hardy, supra, 2 Cal.4th at p. 167.) The trial court here did not abuse its discretion in denying severance.

Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 9-14.

2.   Analysis

The conclusion of the state court of appeal was not contrary to, or an unreasonable application of, clearly established federal law, and was based upon a reasonable determination of the facts in the record. § 2254(d).

First, and most significant, the claim fails because there is no clearly established federal law requiring severance in a state trial. Previously, in an attempt to glean a clearly established legal standard governing joinder/severance, courts in this Circuit cited two cases. The first case was United States v. Lane, 474 U.S. 438, 446 n.8, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986), cited for its proposition in a footnote that "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." See, e.g., Bean v. Calderon, 163 F.3d 1073, 1084 (9th Cir. 1998). However, the Ninth Circuit recently held that the footnote quoted above was dicta, and therefore "did not set forth the governing legal principle . . . . It was merely a comment." Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir. 2010); see also Musladin, 549 U.S. at 74 ("[C]learly established Federal law" in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of this Court's decisions . . . .") (citation and internal quotation marks omitted); Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004) ("While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as persuasive authority for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law.") (citation and internal quotation marks omitted). Moreover, the Ninth Circuit concluded that by using the phrase "[i]mproper joinder does not, in itself,

1   violate the Constitution," the Supreme Court was expressly refraining from imposing a

2   joinder rule on the states. Collins, 603 F.3d at 1132. The Ninth Circuit reaffirmed its

3   holding that "there is no clearly established federal law requiring severance of criminal

4   trials in state court even when the defendants assert mutually antagonistic defenses" in

5   Runningeagle v. Ryan, 686 F.3d 758, 774 (9th Cir. 2012).

6          The second case cited by courts in this Circuit was Zafiro v. United States, 506

7   U.S. 534, 539, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993), in which the Supreme Court

8   held federal district courts should grant severance "only if there is a serious risk that a

9   joint trial would compromise a specific trial right of one of the defendants, or prevent the

10  jury from making a reliable judgment about guilt or innocence." See, e.g., Lambright v.

11  Stewart, 191 F.3d 1181, 1186 (9th Cir. 1999). However, in Collins, the Ninth Circuit ruled

12  that Zafiro is not binding on state courts because "[b]y its own wording, Zafiro only

13  applies to federal and not state court trials. It analyzes only the Federal Rules of Criminal

14  Procedure applicable to federal district courts." Collins, 603 F.3d at 1131-32.

15         Left without any clearly established legal authority, Petitioner - who fails to cite a

16  single federal case governing joinder - has not shown and cannot show the state court of

17  appeal's rejection of the claim violated clearly established federal law. Id. at 1132

18  ("When the Supreme Court does not purport to interpret any provision of the

19  Constitution, then that alone would be enough to defeat a claim that the application of

20  the case to state-court proceedings is clearly established.") (internal quotation omitted);

21  see also Runningeagle, 686 F.3d at 776-77 ("In [Collins], we found that the statement in

22  Lane regarding when misjoinder rises to the level of constitutional violation was dicta

23  and that Zafiro is not binding on the state courts because it addresses the Federal Rules

24  of Criminal Procedure. Neither decision is clearly established Federal law sufficient to

25  support a habeas challenge under § 2254." (Citation omitted.));

26         Even if the standards set forth in Lane and Zafiro were applicable here,

27  Petitioner's claim would fail. Petitioner's concerns were two-fold. First, he claimed that he

28  and Hernandez had antagonistic defenses as they would each blame the other for the

29

1    murder. Second, he claims that it was prejudicial to be tried with Hernandez because

2    there was significantly more evidence as to Hernandez's gang involvement. The state

3    court, in denying the claim addressed both of Petitioner's concerns. The state court

4    determined that the antagonistic defenses were irrelevant, because, regardless who

5    actually shot the victim, both defendants would likely be guilty based on aider and

6    abettor liability. With regard to the gang evidence, the state court found that Petitioner

7    minimized his own gang association, which included fighting with rival gang members

8    and other criminal acts that he performed in concert with other gang members.

9        Petitioner has not shown the trial court's refusal to sever his case from Hernandez

10   resulted in prejudice so great as to deny his right to a fair trial, or that it compromised

11   any specific trial right, preventing the jury from making a reliable judgment about

12   Petitioner's guilt or innocence. Lane, 474 U.S. at 446 n.8; Zafiro v. United States, 506

13   U.S. at 539.

14       Additionally, "even if there were some risk of prejudice [from the joint trial], here it

15   is of the type that can be cured with proper instructions, and juries are presumed to

16   follow their instructions." Zafiro, 506 U.S. at 540 (internal quotation marks omitted). The

17   court also gave a proper "beyond a reasonable doubt" instruction, and instructed the jury

18   that it must "separately consider the evidence as it applies to each defendant" (Reptr's

19   Tr. at 1875-76). Jurors are presumed to follow their instructions, Weeks v. Angelone, 528

20   U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000), and Petitioner has proffered

21   nothing from the record to rebut that presumption here.

22       Because the state court of appeal did not violate clearly established federal law in

23   affirming Petitioner's joint trial with Hernandez, Petitioner is not entitled to federal habeas

24   relief with regard to claim seven.

25       **I.      Denial of Fair Trial – Claim 8**

26       Petitioner's eighth claim is that he was denied the right to a fair trial by the actions

27   of co-defendant's counsel statements regarding Petitioner's decision not to testify at trial.

28   (See Pet. at 16.)

1          1.      State Court Decision

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in subsequent petition for review by the California Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.

In denying Petitioner's claim, the California Court of Appeal explained:

**Comments by Hernandez's counsel**

During his testimony, Hernandez stated he told detectives at the time of his arrest that "I just want him to man up and tell the truth of what he did." Hernandez testified he was referring to Lopez when he made this statement. There was no objection to the questions that elicited this testimony or to the answers given by Hernandez.

During closing argument, Hernandez's counsel stated that Hernandez was the one who "manned up" and that Hernandez "hoped three years ago that [Robert] Lopez would do the same, that he would man up and come forward and admit to what he did." At this point, Lopez's counsel objected and asked to make a motion outside the presence of the jury. There was a bench conference that was not reported. After the bench conference, Hernandez's counsel continued his argument, again stating that Hernandez was the one who "manned up"; Hernandez wanted Lopez to do the same; and Hernandez did not come up with "bogus alibis." There was no objection to these comments from Lopez's counsel.

After Hernandez's counsel concluded his argument and the jury had been dismissed for the weekend, Lopez's attorney moved for a mistrial based on the comments made by Hernandez's counsel, which Lopez's attorney argued amounted to improper comment on Lopez's failure to testify. The trial court denied the motion, finding that counsel's argument focused on the testimony of Hernandez, the statements Hernandez made to detectives, and Lopez's alibi defense.

Lopez contends he was denied a fair trial by virtue of the comments made by Hernandez's counsel. The People argue Lopez has forfeited this issue by not objecting during Hernandez's testimony or objecting during counsel's argument.

The Fifth Amendment prohibits comment by the prosecutor on a defendant's failure to testify. (Griffin v. California (1965) 380 U.S. 609, 615 (Griffin).) In a joint trial, comment by an attorney representing one defendant on the failure of a codefendant to testify violates the codefendant's right to a trial free of comment on his or her silence at trial.

31

1

(People v. Jones (1970) 10 Cal.App.3d 237, 243-244.)

2

Hernandez's testimony about wanting Lopez to "man up" was admitted without objection. Having failed to object to this evidence, Lopez cannot complain about its admission. (Evid. Code, § 353, subd. (a).) As for the comments of Hernandez's counsel during closing argument, there was no objection made on the record until after counsel concluded his closing argument. A criminal defendant forfeits an appellate claim of Griffin error by failing to object at trial. (People v. Valdez (2004) 32 Cal.4th 73, 127 (Valdez); People v. Williams (1997) 16 Cal.4th 153, 254 [subsequent arguments of prosecutorial misconduct in a motion for new trial do not substitute for a timely objection].)

3

4

5

6

7

Assuming arguendo any claim of error has been preserved, the comments by Hernandez's counsel reasonably could be deemed a fair comment on the state of the evidence, falling outside the purview of Griffin. (Valdez, supra, 32 Cal.4th at p. 127.) When making the challenged comments during closing argument, Hernandez's counsel made the remarks in the context of discussing Hernandez's testimony, Hernandez's statements to the detectives, and Lopez's alibi defense. Counsel are given wide latitude during closing argument to make fair comments on the evidence, including reasonable inferences or deductions to be drawn from it. (People v. Hill (1998) 17 Cal.4th 800, 819.)

8

9

10

11

12

13

Assuming arguendo the comments by Hernandez's counsel in closing argument were improper, reversal is required unless the error was harmless. (Hardy, supra, 2 Cal.4th at p. 157.) "'[O]blique'" or "'indirect'" references to a codefendant's failure to testify, made by counsel for another defendant, are harmless error. (Id. at p. 158.)

14

15

16

At most, the comments made by Hernandez's counsel amount to oblique or indirect references on Lopez's silence. Hernandez's counsel commented on Lopez not concurring with Hernandez's version of the events, not Lopez's failure to testify. Hernandez's counsel never asked the jury to infer Lopez's guilt from his silence; he asked the jury to find Hernandez's testimony and version of the case credible. A codefendant is allowed to emphasize to a jury that his view of the case is credible because he took the stand and testified and submitted to cross-examination. If some argument indirectly or obliquely refers to a codefendant's silence, such error generally is harmless. (Hardy, supra, 2 Cal.4th at p. 158; see U.S. v. Patterson (9th Cir. 1987) 819 F.2d 988, 1506 (Patterson).)

17

18

19

20

21

22

The jury was instructed with CALCRIM No. 355, which stated: "A defendant has an absolute constitutional right not to testify. He or she may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. Do not consider, for any reason at all, the fact that a defendant did not testify. Do not discuss that fact during your deliberations or let it influence your decision in any way." As did the appellate court in Patterson, we conclude any error was harmless in light of the instruction to the jury and the oblique reference by Hernandez's counsel. (Patterson, supra, 819 F.2d at p. 1506.)

23

24

25

26

27

Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 28-33.

28

2.   <u>Analysis</u>

The conclusion of the state court of appeal was not contrary to, or an unreasonable application of, clearly established federal law, and was based upon a reasonable determination of the facts in the record. § 2254(d).

First, and most significant, the claim fails because there is no clearly established federal law regarding codefendant's counsel statements regarding a petitioner's decision not to testify at trial.

It is well established that a defendant's right to silence prohibits the Government from commenting on his or her decision not to testify. <u>United States v. Johnson</u>, 767 F.3d 815, 824-825 (9th Cir. 2014) (citing <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965)). The prohibition does not prevent the Government from calling "attention to the defendant's failure to present exculpatory evidence  more generally." United States v. Mayans, 17 F.3d 1174, 1185 (9th Cir. 1994). The Ninth Circuit has found a distinction between arguing that the defendant failure to present or explain the evidence, compared to his failure to testify. <u>See</u> <u>United States v. Sehnal</u>, 930 F.2d 1420, 1424 (9th Cir. 1991) ("Our court has developed a fine line separating comment on the defendant's failure to testify and the failure of the 'defense' to explain the evidence."); <u>United States v. Johnson</u>, 767 F.3d at 824-825.

Petitioner has not presented any argument that there is clearly established federally established law limiting comment on his silence from codefendant's counsel. The Supreme Court of California has extended the freedom from adverse comment on silence by an attorney representing a co-defendant. <u>People v. Hardy</u>, 2 Cal. 4th 86, 157 (1992). Even with these protections in place, the court found that the comments made by Hernandez's counsel were oblique or indirect references to Petitioner's silence, and did not require reversal.

In his closing argument, Hernandez's counsel commented on Hernandez "manning up" and "admitted his role" over three years ago, and hoped that Petitioner would have done the same. (Rept'rs Tr. at 1831.) These comments refer to Petitioner's

1   actions before trial, in providing law enforcement with what Hernandez's counsel
2   considered to be "bogus alibis." (Id. at 1831-32.) Read in context it was clear that
3   Hernandez's counsel commented on Petitioner's failure to confess at the time of the
4   shooting, not Petitioner's failure to testify at trial. At no point did he comment on
5   Petitioner's silence at trial, instead he focused on the alibis that Petitioner had previously
6   discussed.  The state court held that the comments were harmless as the argument only
7   indirectly or obliquely referred to Petitioner's silence at trial. Accordingly, even if the
8   Petitioner could show that there is clearly established federally established law limiting
9   comment on his silence, he has not shown that the state court's denial of the claim was
10  unreasonable.

11      Petitioner has not shown that there was any clearly established federal law
12  violated by codefendant's counsel's statements. Petitioner has not shown that the state
13  court was unreasonable in denying his claims. There was no constitutional error, and
14  Petitioner is not entitled to relief with regard to this claim.

15      **J.      Denial of Right to Testify**

16      Petitioner's ninth claim is that his counsel prevented him from testifying at trial.
17  (See Pet. at 17.)

18              1.      State Court Decision

19      Petitioner presented this claim by way of direct appeal to the California Court of
20  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the
21  appellate court and summarily denied in subsequent petition for review by the California
22  Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme
23  Court's opinion is summary in nature, this Court "looks through" that decision and
24  presumes it adopted the reasoning of the California Court of Appeal, the last state court
25  to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.
26      In denying Petitioner's claim, the California Court of Appeal explained:

27      **Failure to testify**

28          Lopez was represented by two experienced criminal defense

34

attorneys at trial, Mark T. Sullivan and John Hillenbrand. Lopez did not testify during his trial. Essentially, Lopez is accusing defense counsel of having rendered ineffective assistance by not explaining to him that he had the right to testify over their objections.

Although Lopez maintains the record shows that on numerous occasions he requested he be allowed to testify in his own behalf, the only citation to the record for support of this contention is the posttrial motion for a new trial, where Lopez first asserted this position. The motion for a new trial stated that defense counsel prevented Lopez from testifying. Yet, the record on appeal contains no declaration from Lopez attesting to that assertion, apparently because none was filed in the trial court.

Clearly, Lopez had to be aware that defendants in criminal cases could testify; his codefendant Hernandez testified. We are not aware of any point in the trial where Lopez raised with the trial court his desire to testify.

Lopez also apparently was aware of his ability to seek a confidential hearing with the trial court if he had any concerns about his legal representation. He sought and received such a hearing regarding the counsel he had representing him on the motion for new trial. There is no indication in the record he ever sought such a hearing regarding either Sullivan or Hillenbrand during his trial.

The trial court was not required to obtain an affirmative waiver from Lopez of his right to testify. A trial judge is entitled to assume that a defendant represented by counsel who does not testify is "'merely exercising his Fifth Amendment privilege against self-incrimination and is abiding by his counsel's trial strategy."'" (People v. Alcala (1992) 4 Cal.4th 742, 805.)

There is simply no support in the record for Lopez's assertion that his defense counsel failed to inform him he had a right to testify over their objections. Lacking any support in the record for Lopez's assertion, the claim on appeal must be rejected. (People v. Wilson (1992) 3 Cal.4th 926, 936.) A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding. (Ibid.)

Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 14-16.

    2.   Analysis

"[A] defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987); United States v. Gillenwater, 717 F.3d 1070, 1078 (9th Cir. 2013). This right has its sources in several constitutional provisions, including the Fourteenth Amendment's Due Process Clause, the Sixth Amendment's Compulsory Process Clause, and as a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." Rock, 483 U.S. at 51-52; United States v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999). "The

1  right is personal, and 'may only be relinquished by the defendant, and the defendant's

2  relinquishment of the right must be knowing and intentional.'" Pino-Noriega, 189 F.3d at

3  1094 (quoting United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993)).

4      However, "waiver of the right to testify… need not be explicit." Pino-Noriega, 189

5  F.3d at 1094; Joelson, 7 F.3d at 177. Rather, "waiver of the right to testify may be

6  inferred from the defendant's conduct and is presumed from the defendant's failure to

7  testify or notify the court of his desire to do so." Joelson, 7 F.3d at 177; Pino-Noriega,

8  189 F.3d at 1095. "A defendant who wants to reject his attorney's advice and take the

9  stand may do so 'by insisting on testifying, speaking to the court, or discharging his

10 lawyer.'" Pino-Noriega, 189 F.3d at 1095 (quoting Joelson, 7 F.3d at 177). "When a

11 defendant remains 'silent in the face of his attorney's decision not to call him as a

12 witness,' he waives the right to testify," Pino-Noriega, 189 F.3d at 1095 (citation omitted),

13 or claim ineffective assistance of counsel due to his counsel's failure to call him as a

14 witness. United States v. Nohara, 3 F.3d 1239, 1244 (9th Cir. 1993). Additionally, a

15 criminal defendant in California court "must timely and adequately assert his right to

16 testify." People v. Hayes, 229 Cal. App. 3d 1226, 1231, 280 Cal. Rptr. 578 (1991)

17 ("Without such an assertion, a trial judge may safely assume that a defendant who is

18 ably represented and who does not testify is merely exercising his Fifth Amendment

19 privilege against self-incrimination and is abiding by his counsel's trial strategy.").

20     Petitioner has not provided any evidence that he notified the trial court of his

21 desire to testify until he raised the issue at a post-trial motion. Further, the state court's

22 factual determination that the issue of his right to testify was not raised during trial is

23 presumed correct. See 28 U.S.C. § 2254(e)(1). By failing to notify the trial court of his

24 intention to testify, Petitioner waived his right to testify in his defense at trial. Pino-

25 Noriega, 189 F.3d at 1094-95; see Hayes, 229 Cal. App. 3d at 1231-32 ("When the

26 record fails to show such a demand, a defendant may not await the outcome of the trial

27 and then seek reversal based on his claim that despite expressing to his counsel his

28 desire to testify, he was deprived of that opportunity.").

1  For these reasons, the California Supreme Court's rejection of this claim was not

2  contrary to, or an unreasonable application of, clearly established federal law. Petitioner

3  is not entitled to relief with regard to this claim.

4  **K.    Claim 10 – Improper Jury Instructions**

5  Petitioner's tenth claim is that the trial court improperly instructed the jury

6  regarding his extrajudicial statements. (See Pet. at 18.)

7  1.    State Court Decision

8  Petitioner presented this claim by way of direct appeal to the California Court of

9  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

10  appellate court and summarily denied in subsequent petition for review by the California

11  Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme

12  Court's opinion is summary in nature, this Court "looks through" that decision and

13  presumes it adopted the reasoning of the California Court of Appeal, the last state court

14  to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.

15  In denying Petitioner's claim, the California Court of Appeal explained:

16  Lopez raises two instructional issues, contending that each of these
instructions lightened the prosecution's burden of proof. First, Lopez

17  argues that CALCRIM No. 358, instructing that a defendant's pretrial
statements should be viewed with caution, not only lightened the

18  prosecution's burden, but it infringed on Lopez's due process right and
right to present a defense. Second, Lopez claims that CALCRIM No. 370,

19  instructing that the prosecution was not required to prove motive, lessened
the prosecution's burden of proof on the section 186.22, subdivision (a)

20  offense.

21  **CALCRIM No. 358**

22  After his arrest, Lopez waived his Miranda[FN2] rights and gave a
statement to law enforcement. In that statement, he maintained he was

23  not involved in the shooting of Morales, but instead spent the day with a
friend, R.M., and that they had gone to a tuxedo store after school. Lopez

24  contends his defense was premised in large part on his pretrial statements
and the version of CALCRIM No. 358 instructing the jury to view his oral

25  statements with caution undercut his defense and lightened the
prosecution's burden of proof. The instruction did misstate the law;

26  however, it was not prejudicial.

27  FN2: Miranda v. Arizona (1966) 384 U.S. 346.

28  Specifically, the instruction given to the jury in Lopez's trial stated:

"You have heard evidence that the defendants made oral statements before the trial. You must decide whether or not a defendant made any of these statements, in whole or in part. If you decide that a defendant made such statements, consider the statements, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to such statements.

"You must consider with caution evidence of a defendant's oral statement unless it was written or otherwise recorded."

We note that Lopez did not object to, or ask for clarification of, this instruction. The People maintain that the issue is forfeited, citing People v. Spurlock (2003) 114 Cal.App.4th 1122, 1130, for the proposition that "'"a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested an appropriate clarifying or amplifying language."'" [Citations.]"

The issue is not forfeited, however, because the version of CALCRIM No. 358 given at Lopez's trial misstated the law as set forth by the Supreme Court: "'To the extent a statement is exculpatory it is not an admission to be viewed with caution. [Citation.]' [Citation.]" (People v. Slaughter (2002) 27 Cal.4th 1187, 1200.) The cautionary language used in this case referred to oral statements without distinguishing between inculpatory and exculpatory statements, suggesting the jury should apply caution to evidence of all oral statements, whether incriminating or not. To comply with Slaughter, the cautionary language should have been limited to evidence of the defendant's inculpatory statements.

As further support for this conclusion, we note that the current version of CALCRIM No. 358 has been more narrowly drafted. The cautionary language at the end of the instruction now states: "Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded." The revision reinforces our conclusion that the version of CALCRIM No. 358 given in Lopez's case contained error.

We conclude, however, that Lopez was not prejudiced by the error for three reasons. First, the statement Lopez gave to law enforcement apparently was recorded and transcribed and the transcript frequently was referred to during testimony. Consequently, we presume the jury did not apply the cautionary instruction to Lopez's statement to law enforcement since it was otherwise recorded as the instruction states. Absent some contrary indication in the record, and here there is none, we presume the jury followed the instructions. (Hardy, supra, 2 Cal.4th at p. 208.)

Second, evidence of Lopez's alibi was not dependent solely on his pretrial statement. Lopez presented other evidence supporting his alibi defense. R.M. testified that Lopez was with him and some other friends the afternoon of the shooting and accompanied them to a tuxedo store. The tuxedo store provided receipts showing that R.M. and his friends rented tuxedos at 5:31, 5:32, and 5:33 p.m. The clerk at the store told law enforcement there was a fourth boy with R.M. and his friends, but that boy did not rent a tuxedo. Clearly, the challenged instruction did not

38

1

substantially interfere with the presentation of evidence supporting Lopez's alibi defense.

2

3

Third, the jury was instructed on the presumption that a defendant is innocent and the prosecution's burden of proving its case beyond a reasonable doubt. (See CALCRIM No. 103.)

4

5

6

7

Lopez was not precluded in any way from presenting evidence of his alibi defense and the jury had before it ample evidence of Lopez's alibi. It was for the jury to decide whether Lopez's defense, even if believed, precluded his involvement in the shooting at 3:30 p.m. on April 6, 2004, as testified to by Elizarraraz. The jury received numerous instructions on evaluating the testimony of witnesses and the evidence.

8

9

Even assuming the harmless-beyond-a-reasonable-doubt standard set forth in Chapman, supra, 386 U.S. at page 24 is applicable, the error in the present case did not prejudicially affect Lopez's constitutional rights.

10

Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 20-24.

11

2.    Analysis

12

Petitioner claims that the jury was improperly instructed to consider with caution

13

evidence of a Petitioner's out of court statement as the statements were exculpatory,

14

rather than admissions of guilt. See Jury Instruction 358. The state court found that the

15

instruction misstated California law and should not have applied to exculpatory

16

statements made by a defendant. See People v. Slaughter, 27 Cal.4th 1187, 1200

17

(2002). However, while the Court found that the instruction was improperly given,

18

Petitioner's claim failed because it was harmless error. The court relied on three

19

rationales. First, Petitioner's statement was recorded, and therefore as instructed, the

20

jurors were to disregard the need to view the statements with caution. Second, there was

21

other evidence from defense witnesses along with rental receipts to support Petitioner's

22

alibi testimony that he was at the bridal shop with friends at the time of the shooting.

23

Finally, the court reasoned that the jury would have reasonably relied on the other jury

24

instructions regarding the presumption of Petitioner's innocence at trial. Based on these

25

reasons, the state court found the error harmless under California law.

26

Jury instructions are creatures of state procedural and substantive law, and thus a

27

habeas court will strongly defer to the judgments of the state courts with respect to their

28

application. It is conceded in this case that the trial court did in fact err by providing the

1    jury instruction in question. The primary concern here is whether the state court applied

2    its "harmless error" standard in a manner that was contrary to, or an unreasonable

3    application of clearly established federal law.

4         The proper harmless error standard on direct appeal is defined in <u>Chapman v.

5    California</u>, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under the <u>Chapman</u>

6    rule, a trial error is harmless if it is found that, had the error not occurred, it is beyond a

7    reasonable doubt that the jury would have come to the same conclusion. <u>Id.</u>; <u>see</u> <u>Fry v.

8    Pliler</u>, 551 U.S. 112, 116, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007); <u>Brecht v.

9    Abrahamson</u>, 507 U.S. 619, 622, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). In a

10   collateral review such as a habeas corpus proceeding, the standard under which relief

11   may be granted is more strict: The petitioner must show that the error "had substantial

12   and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>, 507 U.S. at 637

13   (quoting <u>Kotteakos v. U.S.</u>, 328 U.S. 750, 776, 66 S. Ct. 1239, 90 L. Ed. 1557(1946)).

14   "Under this standard, habeas petitioners may obtain plenary review of their constitutional

15   claims, but they are not entitled to habeas relief based on trial error unless they can

16   establish that it resulted in 'actual prejudice.'" <u>Brecht</u>, 507 U.S. at 637.

17        The state court expressly applied the <u>Chapman</u> harmless error test with regard to

18   this claim. It found that Petitioner was not precluded from presenting all the evidence

19   relevant to his alibi defense, and that the jury received numerous proper instructions

20   evaluating the testimony of the witnesses and testimony presented at trial. Based on the

21   totality of the circumstances, the state court found that the instructional error did not

22   prejudicially affect Petitioner's constitutional rights.

23        This Court finds that the improper administration of Jury Instruction 358 did not

24   have a substantial and injurious effect or influence in determining the jury's verdict. As

25   the state court noted, Petitioner's statements were recorded, so the jury, having

26   presumed to follow the instruction, would have disregarded the cautionary instruction

27   based on the wording of the instruction itself. Further, even if the jury considered

28   Petitioner's statements with caution, Plaintiff corroborated his statements regarding his

1   alibi with other witness statements and documentary evidence. Finally, the jury in this
2   case received a number of instructions from the trial court, that when taken together,
3   substantially support a finding that the jury properly weighed the evidence presented at
4   trial. These included:

5       (1) That defendant must be found guilty beyond a reasonable doubt, stating, "you
6   must impartially compare and consider all the evidence that was received throughout the
7   entire trial." (Rept'r Tr. at 1875-76.)

8       (2) A definition of direct and circumstantial evidence, stating, "[y]ou must decide
9   whether a fact in issue has been proved based on all the evidence." (Id. at 1878.)

10      (3) Instructions on the credibility or believability of witnesses, stating that, "[y]ou
11  may believe all, part, or none of any witness's testimony. Consider the testimony of each
12  witness and decide how much of it you believe," and that jurors should "not automatically
13  reject testimony just because of inconsistencies or conflicts. Consider whether the
14  differences are important or not." (Id. at 1880.)

15      Petitioner argues that the instruction violated his constitutional rights. However, he
16  does not explain how the result of trial would have been different had the jurors been
17  properly instructed, specifically that the jury would have properly credited his testimony
18  and arrived at a different verdict. Even had he presented such an argument, it is
19  unpersuasive considering the totality of evidence presented to the jury, and that the
20  instructions given explicitly told the jury to disregard the cautionary instruction to
21  Petitioner's  statements that were recorded.

22      This Court finds that the Jury Instruction 358 did not have a substantial and
23  injurious effect or influence in determining the jury's verdict. The error did not actually
24  prejudice defendant. Brecht, 507 U.S. at 637. There is no indication that the state court
25  ruled in a manner that was "contrary to, or involved an unreasonable application of,
26  clearly established Federal law, as determined by the Supreme Court of the United
27  States; or resulted in a decision that was based on an unreasonable determination of the
28  facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

1    2254(d). For these reasons, it is recommended that the claim be denied.

2    **L.      Claim 11 – Right to Cross-Examination**

3    Petitioner's eleventh claim is that the trial court limited his right to question his co-

4    defendant, violating his right to cross-examination. (See Pet. at 19.)

5    1.      State Court Decision

6    Petitioner presented this claim by way of direct appeal to the California Court of

7    Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

8    appellate court and summarily denied in subsequent petition for review by the California

9    Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme

10   Court's opinion is summary in nature, this Court "looks through" that decision and

11   presumes it adopted the reasoning of the California Court of Appeal, the last state court

12   to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.

13   In denying Petitioner's claim, the California Court of Appeal explained:

14   **Cross-examination of Hernandez**

15
16   Lopez also argues that his constitutional right to confront witnesses
     and to a fair trial was infringed when the trial court precluded him from
     cross-examining Hernandez on whether Hernandez washed his hands
17   after the shooting in order to get rid of gunshot residue. We disagree.

18   The trial court deemed the gunshot residue testing that had been
     performed on Hernandez after arrest unreliable and inadmissible. The trial
     court precluded Lopez from questioning Hernandez about the gunshot
19   residue testing or the results.

20   Hernandez testified that he assaulted Villanueva with a chain, but
     that he did not bring a gun to the scene or fire a gun during the incident.
21   Hernandez testified that unbeknownst to him, Lopez brought a gun to the
     scene and shot Morales. When Hernandez was stopped by police minutes
22   after the shooting, his hands were cold and wet.

23   Lopez was permitted to ask Hernandez on cross-examination if
     Hernandez's hands were cold and wet when he was arrested; Hernandez
24   responded in the affirmative. Lopez next asked Hernandez if he was trying
     to "wash something off your hands," to which Hernandez responded in the
25   negative. It was then brought out on cross-examination that after the
     shooting Hernandez stopped his car next to a canal. The water was at the
26   top edge of the canal and the water was cold.

27   "The Confrontation Clause of the Sixth Amendment guarantees the
     right of an accused in a criminal prosecution 'to be confronted with the
28   witnesses against him.'" (Delaware v. Van Arsdall (1986) 475 U.S. 673,

678 (Van Arsdall). "[T]he right of confrontation [under the Sixth Amendment] includes the right to cross-examine adverse witnesses on matters reflecting on their credibility." (People v. Quartermain (1997) 16 Cal.4th 600, 623.) "'However, not every restriction on a defendant's desired method of cross-examination is a constitutional violation.... [U]nless the defendant can show that the prohibited cross-examination would have produced "a significantly different impression of [the witnesses'] credibility" [citation], the trial court's exercise of its discretion in this regard does not violate the Sixth Amendment.' [Citation.]" (People v. Chatman (2006) 38 Cal.4th 344, 372.) "[T]he burden is on an appellant to affirmatively show in the record that error was committed by the trial court." (People v. Alvarez (1996) 49 Cal.App.4th 679, 694.)

Here, Lopez essentially claims his right to confront and cross-examine witnesses was infringed because he was prohibited from cross-examining Hernandez regarding inadmissible evidence. There is simply no right to cross-examine a witness on matters that are inadmissible, even if the inadmissible matter was raised in direct examination. (1 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 4th ed. 2010), Method and Scope of Examination of Witnesses, § 28.87, p. 548; id., § 28.100, p. 555; see also People v. Steele (2002) 27 Cal.4th 1230, 1273 (conc. opn. of George , C.J.).)

Assuming for purposes of argument the trial court erred in this regard, any error was harmless. The constitutionally improper denial of a defendant's opportunity to cross-examine an adverse witness on matters reflecting on the witness's credibility is subject to the harmless error standard set forth in Chapman v. California (1967) 386 U.S. 18 (Chapman). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." (Van Arsdall, supra, 475 U.S. at p. 684.)

Lopez's defense was an alibi defense; he claimed to be at a tuxedo rental store when the shooting took place. Under the prosecution theory of the case, it did not matter if Lopez or Hernandez was the shooter or an aider and abettor; an aider and abettor is equally guilty with the perpetrator. (§ 30.)

Jurors do not need to agree unanimously by which method the defendant attains his status as a principal in the crime. (People v. Forbes (1985) 175 Cal.App.3d 807, 817.) As the California Supreme Court stated: "Not only is there no unanimity requirement as to the theory of guilt, the individual jurors themselves need not choose among the theories, so long as each is convinced of guilt. Sometimes ... the jury simply cannot decide beyond a reasonable doubt exactly who did what. There may be a reasonable doubt that the defendant was the direct perpetrator, and a similar doubt that he was the aider and abettor, but no such doubt that he was one or the other." (People v. Santamaria (1994) 8 Cal.4th 903, 919.)

Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 16-20.

2.    Analysis

The United States Supreme Court has recognized that the Confrontation Clause

43

of the Sixth Amendment protects a defendant's right to cross-examine witnesses. See Olden v. Kentucky, 488 U.S. 227, 109 S. Ct. 480, 102 L. Ed. 2d 513 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986); Davis v. Alaska, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). The right to cross-examine a witness includes the opportunity to show not only that a witness is biased, but also that the testimony is exaggerated or otherwise unbelievable. Fowler v. Sacramento County Sheriff's Dept., 421 F.3d 1027, 1035 (9th Cir. 2005) (citing Pennsylvania v. Ritchie, 480 U.S. 39, 51-52, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987)). To show a restriction on cross-examination violates the Confrontation Clause, a defendant must demonstrate "'[a] reasonable jury might have received a significantly different impression of a [witness's] credibility had counsel been permitted to pursue his proposed line of cross-examination.'" Slovik v. Yates, 556 F.3d 747, 753 (9th Cir. 2009) (quoting Van Arsdall, 475 U.S. at 680).

Trial judges do retain wide latitude to impose reasonable limits on cross-examination based on concerns including harassment, prejudice, confusion of the issues, or interrogation that is repetitive or only marginally relevant. See Van Arsdall, 475 U.S. at 679; see also Wood v. Alaska, 957 F.2d 1544, 1549 (9th Cir. 1992) (explaining even relevant cross-examination may properly be excluded if its probative value is outweighed by other legitimate interests). Such restrictions are permissible, provided they are "'not . . . arbitrary or disproportionate to the purposes they are designed to serve.'" Michigan v. Lucas, 500 U.S. 145, 151, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 56, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)).

Confrontation Clause claims are subject to harmless error analysis. Ocampo v. Vail, 649 F.3d 1098, 1114 (9th Cir. 2011). On federal habeas review, the Court measures the harmlessness of an error according to the standard established in Brecht, 507 U.S. at 637-38. See Fry v. Pliler, 551 U.S. 112, 116, 127 S. Ct. 2321, 168 L. Ed. 2d 16 (2007); see also Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010). "Under this standard, habeas petitioners . . . are not entitled to habeas relief based on trial error

1    unless they can establish it resulted in 'actual prejudice.'"

2          In turn, when assessing whether an error had a "substantial and injurious effect,"

3    this Court must consider five factors propagated by the Supreme Court in <u>Van Arsdall</u>:

4    (1) the importance of the witness' testimony in the prosecution's case; (2) whether the

5    testimony was cumulative; (3) the presence or absence of evidence corroborating or

6    contradicting the testimony of the witness on material points; (4) the extent of cross-

7    examination otherwise permitted; and (5) the overall strength of the prosecution's case.

8    <u>Merolillo v. Yates</u>, 663 F.3d 444, 455 (9th Cir. 2011) (citing <u>Van Arsdall</u>, 475 U.S. at

9    684).

10          Even assuming the trial court's refusal to allow further cross-examination of

11    Hernandez was error, the Court concludes the <u>Van Arsdall</u> factors dictate that the error

12    was not prejudicial under <u>Brecht</u>. First, whether Hernandez was the shooter was

13    immaterial to the prosecution's case, as Petitioner would be found guilty of aider an

14    abettor liability regardless how he was involved in the attack. The cross-examination did

15    not affect Petitioner's presentation of his alibi defense that he was with friends getting

16    tuxedo rentals. Further, even though the trial court limited testimony regarding testing of

17    Hernandez's hands for gunpowder residue (as the tests were inconclusive), Petitioner

18    was allowed to question Hernandez regarding whether he attempted to wash his had

19    shortly after the shooting. Based on the significant questioning that was allowed,

20    Petitioner was able to create inferences for the jury suggesting that Hernandez was the

21    shooter, and thereafter washed his hands in an attempt to destroy evidence. Upon

22    weighing the <u>Van Arsdall</u> factors, it is unlikely that the trial court's refusal to allow

23    Petitioner to cross-examine Hernandez about the gunpowder residue testing had a

24    "substantial and injurious effect or influence in determining the jury's verdict." <u>Brecht</u>,

25    507 U.S. at 623.

26          The Court concludes the state court's denial of Petitioner's claim was not an

27    objectively unreasonable application of clearly established federal law. Habeas relief is

28    not warranted as to this claim.

**M.    Claim 12 – Improper Jury Instructions Regarding Motive**

Petitioner's twelfth claim is that the trial court improperly instructed the jury regarding motive as it applied to gang enhancement charges. (See Pet. at 20-21.)

1.    State Court Decision

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in subsequent petition for review by the California Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.

In denying Petitioner's claim, the California Court of Appeal explained:

**CALCRIM No. 370**

CALCRIM No. 370, as given to the jury, stated in relevant part: "The People are not required to prove that a defendant had a motive to commit any of the crimes charged." Lopez contends that instructing the jury with CALCRIM No. 370 undercut the prosecution's burden of proof because motive is an element of the section 186.22, subdivision (a) offense. We disagree.

Even though Hernandez objected to instructing the jury with CALCRIM No. 370, Lopez did not join in or voice any objection to this instruction in the trial court. Lopez also did not request any modification to, or clarification of, the CALCRIM No. 370 instruction. The People contend Lopez has therefore forfeited this issue on appeal.

Section 1259 provides in relevant part: "The appellate court may also review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." This section distinguishes claims of instructional error, which may be asserted even without objection if they affect the defendant's substantial rights, from other claims of error, which require a trial objection. (See, e.g., People v. Hillhouse (2002) 27 Cal.4th 469, 505-506 (Hillhouse).) Because Lopez contends the giving of CALCRIM No. 370 affected his substantial rights, we decline to consider the issue forfeited and address the merits.

"The test is whether there is a reasonable likelihood that the jury understood the instruction in a manner that violated the defendant's rights. In making this determination, we consider the specific language under challenge and, if necessary, the instructions as a whole. [Citation.]" (People v. Andrade (2000) 85 Cal.App.4th 579, 585; see also People v.

1    Jablonski (2006) 37 Cal.4th 774, 831.)

2         Applying this standard, Lopez's contention fails for two reasons.
     First, he confuses motive with the specific intent requirement of the
3    section 186.22, subdivision (a) offense. Second, the instructions taken as
     a whole adequately and properly instructed the jury on the gang offense.

4         Motive describes the reason a person decides to commit a crime.
     The reason, however, is different from a required mental state, such as a
5    specific intent. (Hillhouse, supra, 27 Cal.4th at pp. 503-504.) The jury was
     instructed on the elements of the criminal street gang offense and the
6    specific mental state required for a guilty verdict on that charge. CALCRIM
     No. 1400 defined the offense of active participation in a criminal street
7    gang, including the specific intent requirement, and CALCRIM No. 252
     also emphasized the need to find that the defendant acted with a specific
8    intent in order to return a guilty verdict on this offense. These instructions
     correctly stated the law. (§ 186.22, subd. (a); People v. Posey (2004) 32
9    Cal.4th 193, 218.)

10        It is well settled that the correctness of jury instructions is
     determined from the entire charge of the trial court and not from
11   consideration of parts of the instruction or from a particular instruction.
     (People v. Harrison (2005) 35 Cal.4th 208, 252.) There is no reasonable
12   likelihood the jury would have been confused regarding the elements of
     the gang offense and the prosecution's burden of proof, considering the
13   instructions as a whole. (People v. Riggs (2008) 44 Cal.4th 248, 314.)

14        CALCRIM No. 1400 does not use the word "motive" anywhere in
     the definition of the offense. CALCRIM No. 252 does not use the word
15   "motive." The jury was instructed that each charged offense was a
     separate crime and each offense must be considered separately. (See
16   CALCRIM No. 3515.) CALCRIM No. 103 instructed the jury that the
     prosecution had to "prove each element of a crime ... beyond a
17   reasonable doubt." The jury also was instructed that it was to pay "careful
     attention to all of these instructions and consider them together." (See also
18   CALCRIM No. 200.)

19        We assume that jurors are capable of understanding and
     correlating all instructions that are given. (People v. Musselwhite (1998)
20   17 Cal.4th 1216, 1248.) Based on the totality of the instructions given, we
     conclude there is no reasonable likelihood the jury misconstrued or
21   misapplied the instructions and therefore no constitutional violation
     occurred. (People v. Maury (2003) 30 Cal.4th 342, 437.)

22
     Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 24-28.
23
              2.    Analysis
24
         As previously described, the primary concern with regard to allegedly improper
25
     jury instructions is whether the state court applied its "harmless error" standard in a
26
     manner that was contrary to, or an unreasonable application of clearly established
27
     federal law. See Chapman, 386 U.S. at 24. Under the Chapman rule, a trial error is
28

                                        47

1    harmless if it is found that, had the error not occurred, it is beyond a reasonable doubt

2    that the jury would have come to the same conclusion. Id.; Brecht, 507 U.S. at 622.

3        Here, on collateral review, Petitioner must show that the error "had substantial

4    and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at

5    637.

6        Petitioner has not shown that the instruction had an injurious effect on the jury's

7    verdict. As described by the state court, Petitioner was properly instructed. The

8    prosecution did not need to prove that Petitioner had motive, i.e., a reason, to commit

9    the crime. However, the trial court did instruct the jury that to find Petitioner guilty of the

10   gang enhancement, the jury must find that Petitioner specifically intended to assist,

11   further, or promote criminal conduct by gang members. (Rept'r Tr. at 1904.) The jury was

12   properly instructed regarding the element of the gang enhancement, and a jury is

13   presumed to follow its instructions. Weeks v. Angelone, 528 U.S. 225, 234, 120 S. Ct.

14   727, 145 L. Ed. 2d 727 (2000).

15       The Court finds that the instructions did not have a substantial and injurious effect

16   or influence in determining the jury's verdict. The state court did not error in its

17   instructions on motive or specific intent, and Petitioner was not actually prejudiced.

18   Brecht, 507 U.S. at 637. There is no indication that the state court ruled in a manner that

19   was "contrary to, or involved an unreasonable application of, clearly established Federal

20   law, as determined by the Supreme Court of the United States; or resulted in a decision

21   that was based on an unreasonable determination of the facts in light of the evidence

22   presented in the State court proceeding." 28 U.S.C. § 2254(d). It is recommended that

23   the claim be denied.

24       **N.**    **Claim 13 – Cumulative Error**

25       Petitioner's thirteenth and final claim is for cumulative error. (See Pet. at 29-30.)

26           1.    State Court Decision

27       Petitioner presented this claim by way of direct appeal to the California Court of

28   Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

1  appellate court and summarily denied in subsequent petition for review by the California

2  Supreme Court. (See Answer, Ex. A; Lodged Doc. 18.) Because the California Supreme

3  Court's opinion is summary in nature, this Court "looks through" that decision and

4  presumes it adopted the reasoning of the California Court of Appeal, the last state court

5  to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n.3.

6      In denying Petitioner's claim, the California Court of Appeal explained:
       **V. Cumulative Error**
7
       Lopez fails to persuade us any prejudicial error occurred, so his
8      cumulative error argument fails. (People v. Heard (2003) 31 Cal.4th 946,
       982.)
9
10  People v. Lopez, 2011 Cal. App. Unpub. LEXIS 4808 at 38.

11      2.    Analysis

12      The Ninth Circuit has concluded that under clearly established United States

13  Supreme Court precedent, the combined effect of multiple trial errors may give rise to a

14  due process violation if it renders a trial fundamentally unfair, even where each error

15  considered individually would not require reversal. Parle v. Runnels, 505 F.3d 922, 927

16  (9th. Cir. 2007) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40

17  L. Ed. 2d 431 (1974) and Chambers v. Mississippi, 410 U.S. 284, 290, 93 S. Ct. 1038,

18  35 L. Ed. 2d 297 (1973)). See also Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) (if

19  no error of constitutional magnitude occurred at trial, "no cumulative prejudice is

20  possible"). "The fundamental question in determining whether the combined effect of trial

21  errors violated a defendant's due process rights is whether the errors rendered the

22  criminal defense 'far less persuasive,' Chambers, 410 U.S. at 294, and thereby had a

23  'substantial and injurious effect or influence' on the jury's verdict." Parle, 505 F.3d at 927

24  (quoting Brecht, 507 U.S. at 637).

25      This Court has addressed each of Petitioner's claims raised in the instant petition

26  and has concluded that no error of constitutional magnitude occurred at his trial in state

27  court. This Court also concludes that the errors alleged by Petitioner, even when

28  considered together, did not render his defense "far less persuasive," nor did they have

1 of 50

a "substantial and injurious effect or influence on the jury's verdict." Accordingly, Petitioner is not entitled to relief on his claim of cumulative error.

## IV.  RECOMMENDATION

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   February 29, 2016          /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE

50